# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ANTONIO GONZALEZ MAYA, ] | |
| ] | |
| Plaintiff, ] | |
| ] | |
| v. ] | CIVIL ACTION NO. |
| ] | 2:17-CV-8005-KOB |
| UNITED STATES OF AMERICA, ] | |
| ] | |
| Defendant. ] | |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on Antonio Gonzalez Maya's motion to vacate, set aside, or correct sentence, 28 U.S.C. § 2255. (Doc. 1). The court finds that the motion is due to be **DENIED**.

In his timely-filed motion to vacate, Mr. Maya raises four grounds for why this court should vacate his sentence. (Doc. 1). Mr. Maya asserts that (1) counsel represented to him that he would receive a sentence no longer than five years and counsel instructed him to respond, "yes," to the court's questions at the plea colloquy, even if that response was untruthful; (2) the court improperly enhanced his sentence based on personal opinions and facts not included in the indictment or admitted as part of his plea agreement; (3) counsel failed to object to the court's unreasonable sentence, which Mr. Maya states was based on an incorrect calculation of his supervised release guideline range and an improper enhancement

1

for possession of firearms; and (4) his supervised release sentence is unconstitutional because he was sentenced above the guideline range. Grounds 2 and 4 fail because of the collateral-attack bar in Mr. Maya's plea agreement. Grounds 1 and 3 fail because Mr. Maya has failed to establish under *Strickland v. Washington*, 466 U.S. 668 (1984), that counsel was ineffective or that he was prejudiced by any ineffective assistance.

## BACKGROUND

Pursuant to a plea agreement, Mr. Maya pleaded guilty to possessing methamphetamine with intent to distribute, 21 U.S.C. § 841(a)(1). (Case no. 2:15-cr-323 ("Crim. Doc."), docs. 13, 22). Attorney Samuel Holmes represented Mr. Maya during the proceedings.

The written plea agreement, which Mr. Maya initialed on each page and signed at the end, noted that he faced a 10-year mandatory minimum sentence. (Crim. Doc. 13 at 2, 14). Mr. Maya's plea agreement also included an appeal and collateral-attack waiver. That provision stated:

> I, Antonio Gonzalez Maya, hereby waive and give up my right to appeal my conviction in this case, as well as any fines, restitution, and/or sentence the court might impose upon me. Further, I waive and give up the right to challenge my conviction and/or sentence, any fines, restitution, forfeiture orders imposed or the manner in which my conviction and/or sentence, any fines, restitution, and forfeiture orders were determined in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255.

(Crim. Doc. 13 at 7-8). The appellate and collateral-attack waiver contained exceptions, preserving Mr. Maya's right to appeal and collaterally attack his sentence on three grounds: (1) a sentence imposed above the applicable statutory maximum; (2) a sentence imposed above the advisory guidelines range found by the court; or (3) ineffective assistance of counsel. (*Id.* at 8).

During the plea colloquy, this court told Mr. Maya that it would ask him "questions about the offense with which you are charged or other questions relating to your plea of guilty or to matters pertaining to sentencing." (Crim. Doc. 33 at 3). This court added that "[a]ny answers to my questions must be full, complete and true because a false answer or a false statement made under oath could be the basis for prosecuting you for perjury." (*Id.* 33 at 3). Mr. Maya stated that he understood. The court then placed Mr. Maya under oath.

The court confirmed with Mr. Maya that he understood the meaning of the collateral-attack waiver in the plea agreement, including the meaning of a collateral challenge. (Crim. Doc. 33 at 9).

The court noted the possible statutory penalties that Mr. Maya could receive, including the 10-year mandatory minimum sentence and that it lacked the ability to impose less than the mandatory minimum on its own. (Crim. Doc. 33 at 14). The court also told Mr. Maya that any sentence he might receive could be different from any estimate or prediction made by his counsel or anyone else. (*Id.* at 15).

3

Mr. Maya stated that he was satisfied with his counsel. (*Id.* at 18). The court asked Mr. Maya at the end of the hearing whether he, for any reason, did not want to plead guilty, observing that this would be Mr. Maya's last opportunity to withdraw from that guilty plea. (*Id.* at 22). Mr. Maya confirmed that he wanted to plead guilty, and this court adjudicated him as such. (*Id.*).

Prior to sentencing, the probation office prepared a presentence investigation report ("PSR"). The PSR included an enhancement to Mr. Maya's offense level for the possession of firearms, U.S.S.G. § 2D1.1(b)(1). Mr. Maya's custodial guideline range in the PSR was 151 to 188 months' imprisonment; his supervised-release guideline range in the PSR was 5 years to life.

This court sentenced Mr. Maya on June 20, 2016. Mr. Maya did not file any objections to the findings made in the PSR. (Crim. Doc. 34 at 3). This court also asked Mr. Maya directly whether he had read and discussed the PSR with counsel and whether he had any objections to the content of the report. (*Id.* at 3). Mr. Maya confirmed that he had read and discussed the report and that he had no objections to its content. (*Id.*).

Adopting the PSR's findings, the court found that the advisory guideline range was 151 to 188 months' imprisonment, with a mandatory minimum of 120 months' imprisonment. This court stated that Mr. Maya's "supervised release period" was between five years and life. (Doc. 34 at 4). The court offered Mr.

Maya an opportunity to speak on his own behalf before imposing sentence. But Mr. Maya told this court that he had "nothing to say." (Crim. Doc. 34 at 6).

This court sentenced Mr. Maya to 151 months' imprisonment and 120 months' supervised release. The court explained: "the fact that the defendant had three guns or more that were used, in my opinion, to more than likely facilitate this drug operation that he had going, . . . that justifies a sentence higher than the mandatory minimum . . . ." (Crim. Doc. 34 at 8). The court observed that "[i]t's been my experience that drugs and guns are a dangerous combination and not infrequently results in violence of some nature." (*Id.* at 8-9).

This court also expressed concern at Mr. Maya's "almost immediate[]" reentry to the United States after his previous conviction and observed that, if Mr. Maya reentered the country during the supervised-release term, such reentry would be a violation of his supervised-release term as well as an additional felony. This court further affirmed that "the sentence imposed reflects the seriousness of the offense, promotes respect for the law and provides just punishment for the offense and also affords adequate deterrence to criminal conduct." (Crim. Doc. 34 at 9).

Mr. Maya did not object to this court's findings of fact, the sentence, or the manner in which the court pronounced the sentence.

Mr. Maya timely filed a notice of appeal. On appeal, he argued that his sentence was substantively unreasonable because this court failed to vary

downward and failed to consider the immigration consequences of Mr. Maya's conviction in its sentence. Mr. Maya also argued that this court erred in calculating his supervised release guideline range. However, the Eleventh Circuit dismissed Mr. Maya's appeal pursuant to the appeal waiver contained in the plea agreement. (Crim. Doc. 36).

Mr. Maya is currently incarcerated at Yazoo City Low FCI.

## **DISCUSSION**

*I.  Sentencing Claims*

Grounds 2 and 4 fall within Mr. Maya's collateral-attack wavier, which includes motions to vacate sentence brought under § 2255. Mr. Maya's claim in Ground 2 that the court used improper facts in determining his sentence is a claim of procedural unreasonableness in sentencing that falls squarely into the collateral-attack waiver. *See Gall v. United States*, 552 U.S. 38, 51 (2007) ("[A court] must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence . . . ."). None of the waiver's exceptions apply because the court sentenced Mr. Maya below the statutory maximum and within the guideline range as found by the court. The collateral-attack waiver likewise precludes Ground 4—

in which Mr. Maya challenges the length of his term of supervised release—for the same reasons. The court must therefore **DENY** Mr. Maya's claims in Grounds 2 and 4 of his motion to vacate sentence. *See United States v. Bushert*, 997 F.2d 1343 (11th Cir. 1993) (holding that appeal waivers made knowingly and voluntarily are valid and enforceable).

> II.     *Ineffective Assistance of Counsel Claims*

Mr. Maya's ineffective assistance of counsel claims, Grounds 1 and 3, fall within the collateral-attack waiver's exception for ineffective assistance of counsel claims. However, these claims lack merit.

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel. *See Strickland*, 466 U.S. at 684. To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that (1) his counsel's performance fell below an objective standard of reasonableness; and (2) he suffered prejudice because of that deficient performance. *Id.* at 684-91. The test is "whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*).

The court presumes that petitioner's counsel acted reasonably. *Strickland*, 466 U.S. at 690; *Williams v. Head*, 185 F.3d 1223, 1228 (11th Cir. 1999) ("[W]here the record is incomplete or unclear about [counsel]'s actions, we will

presume that he did what he should have done, and that he exercised reasonable professional judgment."). To overcome that presumption, a petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Conclusory or unsupported allegations cannot support an ineffectiveness of counsel claim. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (finding "unsupported allegations, conclusory in nature and lacking factual substantiation" to be an insufficient basis for relief); *see also Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (*en banc*) ("An ambiguous or silent record is not sufficient to disprove the strong and continuing [*Strickland*] presumption.").

Prejudice arises if "a reasonable probability [exists] that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

In Ground 1, Mr. Maya apparently claims that counsel instructed him to lie during the plea colloquy; Mr. Holmes's affidavit directly contradicts Mr. Maya's assertions. And the record shows that the court, at the plea colloquy, placed Mr. Maya under oath and told him that he needed to tell the truth. And in any event, Mr. Maya does not claim that he made any false or inaccurate statement in his plea colloquy that would be a basis for vacating his sentence. For those reasons, Mr. Maya has failed to carry his burden to show that the statements he made at the plea

8

colloquy confirming his understanding of the plea agreement and his desire to plead guilty were false.

Mr. Maya's statements at the plea colloquy likewise contradict his claim in Ground 1 that counsel told him that the court could not sentence him to more than five years' imprisonment. This court told Mr. Maya what the potential penalties associated with his conviction could be, including the fact that he faced a mandatory minimum sentence of 10 years' imprisonment. The plea agreement Mr. Maya signed likewise noted that the offense carried a 10-year mandatory minimum. If that were not enough, the court offered Mr. Maya several opportunities to seek clarification about potential penalties, but Mr. Maya declined those opportunities.

Finally, Mr. Maya's claim in Ground 3 that counsel should have objected to the court's imposition of an enhancement for possession of firearms or to the calculation of the guideline range for his term of supervised release fails.

On the subject of the firearms enhancement and as stated by counsel in his affidavit, "there was no objection to file." The facts in the PSR reflected that law enforcement recovered three guns when searching Mr. Maya's residence. The two-level specific-offense enhancement for possession of firearms under § 2D1.1(b)(1) clearly applied and no objection would have changed that. On this claim, Mr. Maya can neither show that counsel was ineffective nor that he suffered

9

any prejudice. *See Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) ("Counsel was not ineffective for failing to raise these issues because they clearly lack merit.").

As to Mr. Maya's 10-year term of supervised release, the court, the parties, and the PSR correctly noted that the *statutory minimum* term was 5 years and the maximum life. 21 U.S.C. § 841(b)(1)(A); *United States v. Gerrow*, 232 F.3d 831, 835 (11th Cir. 2000). However, Mr. Maya challenges his counsel's performance as to the calculation of his supervised-release *guideline range*. The court agrees with Mr. Maya that the PSR incorrectly states his supervised-release guideline range and that his counsel should have pointed out the error. However, Mr. Maya cannot show that counsel's failure to object to this error prejudiced him.

The PSR wrongly noted that Mr. Maya's supervised-release guideline range was five years to life, rather than five years only. *See* U.S.S.G. § 5D1.2(c) (2015); Guidelines Commentary n.6 ("[I]f subsection (a) requires a range of two years to five years, but the relevant statute requires a minimum term of supervised release of five years and a maximum term of life, the term of supervised release provided by the guidelines is five years."). Given that the Guidelines commentary so plainly states the correct Guidelines range, counsel's failure to pursue this inaccuracy in the PSR was unreasonable. *See Hinton v. Alabama*, 134 S. Ct. 1081, 1089 (2014) ("An attorney's ignorance of a point of law that is fundamental to his case

10

combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*."). Counsel had "no conceivable strategic basis" to fail to pursue this issue. *See Griffith v. United States*, 871 F.3d 1321, 1330-31 (11th Cir. 2017).

As to prejudice, the Supreme Court has indicated that use of an erroneously high guideline range standing alone can create a "reasonable probability" that the sentencing judge would have given the defendant a different sentence had it been apprised of the correct guideline range. *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1347 (2016) ("[I]n the ordinary case a defendant will satisfy his burden to show prejudice by pointing to the application of an incorrect, higher Guidelines range and the sentence he received thereunder."). Similarly, the Eleventh Circuit recently suggested (without deciding) that the use of an erroneously high guidelines range can result in prejudice under *Strickland*. *See Griffith*, 871 F.3d at 1338-40 ("[T]he fact that the district court sentenced Griffith to the bottom of the guidelines range on the grouped counts, even though the government argued for a sentence above the guidelines range, is evidence of a reasonable probability of a different result."). But these cases merely hold that a defendant *may* show prejudice from a guidelines-calculation error, not that he will.

In this case, Mr. Maya cannot show prejudice from the error in calculating in his guideline range. Although the guideline "range" was 5 years, the statutory

maximum term of supervised release remained up to life. And the record reflects this court's intention to impose a 10-year supervised-release sentence regardless of the guideline-range calculation. The factual basis for Mr. Maya's supervised-release sentence has not changed; all of the reasons the court stated on the record for imposing its sentence, including the 10-year supervised-release term, remain unaffected by the difference in Mr. Maya's guideline supervised-release calculation. Said differently, a legal misapplication of the relationship between U.S.S.G. § 5D1.2(c) (noting the guideline ranges for supervised release) and 21 U.S.C. § 841(b)(1)(A) (increasing the statutory minimum and maximum supervised-release ranges for certain drug crimes) caused the error in calculating Mr. Maya's supervised-release guideline range in the PSR, but the facts and considerations supporting Mr. Maya's sentence remain the same.

Lastly, this court sentenced Mr. Maya and would have sentenced Mr. Maya to the same sentence even if the PSR had noted the correct supervised-release guideline range. *See Williams v. United States*, 2017 WL 4277284, at *16 (N.D. Ga. Sept. 26, 2017) ("Movant does not show prejudice as [to] the final sentencing outcome. The undersigned would have imposed the same sentence based on the § 3553 factors already considered."). In particular and as suggested on the record at sentencing, Mr. Maya's likelihood of reentry after release and removal necessitated an extended period of supervised release. The correct guideline range

in § 5D1.2(c) changes nothing concerning the court's authority to impose a term of supervised release up to the statutory maximum of life. Ten years falls within that statutory range.

For those reasons, the court must **DENY** Mr. Maya's motion to vacate sentence as to Grounds 1 and 3. Having addressed all of Mr. Maya's claims and found none upon which he has established any entitlement to relief, the court **DENIES** Mr. Maya's § 2255 motion.

**DONE** and **ORDERED** this 9th day of March, 2018.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT
JUDGE